UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSAN S. SWANSON,
f/k/a SUSAN S. WORTHEN,

    Plaintiff,

v.                                  CASE No. 8:12-CV-2246-T-TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security fails to evaluate properly the opinion of a treating physician, the decision will be reversed and the matter remanded for further consideration.

---

    [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

    [2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

I.

The plaintiff, who was fifty-two years old at the time her insured status expired and who has a high school education, has worked relevantly as a food preparer (Tr. 38, 180, 184). She filed a claim for Social Security disability benefits, alleging that she became disabled due to a head injury, seizures, a stroke, and short-term memory loss (Tr. 178). Her claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that, through her date last insured of December 31, 2007, the plaintiff had severe impairments of hypertension, cognitive disorder, depression, anxiety, substance abuse disorder, seizure disorder, and status post stroke (Tr. 24). The law judge concluded further that, through the date last insured, the plaintiff had the residual functional capacity (Tr. 26):

> to perform less than light work as defined in 20 CFR 404.1567(b), as the claimant was limited to unskilled work and had to avoid working around dangerous moving machinery, ladders, ropes, scaffolds, and unprotected heights.

The law judge determined that, with these limitations, the plaintiff could have returned to her past work of food preparer (Tr. 28). Accordingly, she ruled that the plaintiff was not disabled (Tr. 29). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A). In this case, also, the plaintiff must show that she became disabled before her insured status expired on December 31, 2007, in order to

receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff attacks the law judge's decision on two grounds. The relevant evidence is that which has a bearing on the plaintiff's condition between August 26, 2005, the alleged disability onset date, and December 31, 2007, the plaintiff's date last insured.[3] The relevant evidence is sparse and not particularly compelling. However, the issue is not whether I think the plaintiff is disabled; that issue is for the law judge. Rather, the issue is

---

[3] The plaintiff originally alleged a disability onset date of January 1, 2003 (Tr. 168), but subsequently amended her onset date to August 26, 2005 (Tr. 39, 433).

whether the law judge committed reversible error in deciding the plaintiff was not disabled.

The plaintiff argues that the law judge failed to give proper weight to the opinion of Dr. Arthur Pettygrove, a treating physician (Doc. 17, pp. 12-16). This contention has merit and warrants reversal.

On August 17, 2010, Dr. Pettygrove completed a Mental Impairment Residual Functional Capacity Questionnaire (Tr. 425-29). Dr. Pettygrove stated that he had treated the plaintiff for ten years, but he had not seen her in three years (Tr. 425, 426). He diagnosed the plaintiff with hypertension, anxiety, organic brain syndrome, and status post cerebral vascular accident, and noted that her prognosis was guarded (Tr. 425). The plaintiff's symptoms included poor memory; sleep disturbance; mood disturbance; emotional lability; loss of intellectual ability; feeling guilty/worthless; difficulty concentrating; perceptual disturbances; social withdrawal; illogical thinking; hostility and irritability; oddities of thought, perception, speech, and behavior; appetite disturbance; obsessions; and grossly disorganized behavior (Tr. 425-26). Dr. Pettygrove opined that the plaintiff has a low I.Q. or reduced intellectual functioning (Tr. 426).

Dr. Pettygrove also assessed the plaintiff's mental abilities and aptitude to do unskilled work, semi-skilled and skilled work, and particular types of jobs (Tr. 427-28). He indicated that the plaintiff had a fair ability to maintain attention for two hour segments, maintain regular attendance and be punctual, and travel in unfamiliar places (id.). With respect to all other matters, the plaintiff was thought to have poor or no ability (id.).

Dr. Pettygrove opined that the plaintiff has slight restriction of activities of daily living, but no difficulty maintaining social functioning or deficiencies of concentration, persistence or pace (Tr. 428-29). The plaintiff was likely to have "bad days" and would be absent from work more than three times a month (Tr. 429). Finally, Dr. Pettygrove stated that the limitations in his questionnaire related back to January 2003 (id.).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is

conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge's consideration of Dr. Pettygrove's opinion was limited to the following (Tr. 27-28):

> The claimant's treating physician, Dr. Arthur Pettygrove, M.D., submitted a medical source statement, which is given little weight by the undersigned. At the time the statement was made, the claimant had not seen Dr. Pettygrove in approximately three years. Further, Dr. Pettygrove's office visit notes document only two visits prior to the claimant's date last insured (Exhibit 4F).

These comments do not constitute good cause for rejecting the opinion of Dr. Pettygrove, who was unquestionably a treating physician.

In the first place, the law judge did not mention, much less evaluate, the opinions expressed by Dr. Pettygrove in the questionnaire. An assessment of these limitations is critical to the proper determination of the plaintiff's residual functional capacity and, concomitantly, whether she is mentally disabled from working. Thus, for example, a vocational expert testified that, if the plaintiff had three absences from work per month, as Dr. Pettygrove opined, she would not be employable (Tr. 72).

Furthermore, the reasons provided by the law judge fail to undermine the validity of Dr. Pettygrove's opinion. This is not a case where Dr. Pettygrove first saw the plaintiff many months after the plaintiff's date last insured and was opining about her condition prior to that date. Rather, Dr. Pettygrove had treated the plaintiff for ten years (Tr. 425), and had seen her during the period at issue. There is no reason to think that the fact that the doctor had not seen the plaintiff in three years had caused him to forget her condition, particularly since he had his treatment notes to refresh his recollection. Consequently, the three-year gap in treatment does not provide a meaningful justification for discounting Dr. Pettygrove's opinion.

Similarly, the fact that Dr. Pettygrove only had notes from two visits prior to the date last insured is not a persuasive reason to discount Dr. Pettygrove's opinion. Typically, an examining physician sees a claimant on just one occasion. That is not a sufficient reason to discount the opinions of examining physicians. A fortiori, an opinion by a treating physician cannot reasonably be discounted merely because he saw the plaintiff just twice during the relevant period.

Moreover, the plaintiff argues with some force that the plaintiff's mental condition would not change significantly during the time she was seen by Dr. Pettygrove. The plaintiff suffered a very serious brain injury in a 1996 vehicle accident and in succeeding years had several strokes. The plaintiff argues that, due to the nature of those problems, there would be very little, if any, improvement in her condition (Doc. 17, p. 14). Whether that is so is a matter that is for the law judge to resolve. But it is an issue that needs to be considered.

In addition, the plaintiff argues that the record in this case failed to contain all of Dr. Pettygrove's treatment records (id., p. 15). In this connection, she asserts that "[t]he ALJ should not have just ignored the fact that ... several years of Dr. Pettygrove's treatment records were missing, and used the short time his records reflected treatment before the date last insured expired to reject his opinion" (id.). There may be some merit in the plaintiff's assertion. Thus, the questionnaire submitted by Dr. Pettygrove stated in response to questions, "see enclosed old records" and "see enclosed" (Tr. 426), and it is not apparent that the enclosed records are included in the administrative transcript.

Notably, the transcript may be incomplete in an additional respect. The comments by a nonexamining reviewing psychologist refer to a "6/07 MCE" (Tr. 297). That indicates that there was a mental consultative examination in June 2007. However, there is no report of such an examination in the record.

In all events, the reasons stated by the law judge for giving Dr. Pettygrove's opinion little weight are not adequate to show good cause for discounting the opinion. Accordingly, a remand is warranted. However, on remand, the Commissioner is not precluded from attempting to show good cause by articulating other reasons why Dr. Pettygrove's opinion should be discounted.

As a second issue, the plaintiff contends that law judge erred in finding that the job of food preparer was past relevant work. (Doc. 17, pp. 17-19). In light of the remand, it is appropriate to pretermit this issue. Nevertheless, some comments on the issue are warranted.

To qualify as past relevant work, the work must have been done (1) within the last fifteen years, (2) long enough for the plaintiff to learn to do it, and (3) at a level constituting substantial gainful activity. See Vaughn v.

Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984); 20 C.F.R. 404.1565(a). Additionally, the regulations provide that work activity will be considered substantial gainful activity if the monthly average of the earnings exceeds a certain amount. 20 C.F.R. 404.1574(b). A plaintiff's work is presumed to be substantial gainful activity if the earnings averaged more than $500.00 a month from January 1990 through the first half of 1999. 20 C.F.R. 404.1574(b)(2); Social Security Administration, Substantial Gainful Activity, http://www.ssa.gov/oact/cola/sga.html. That average increases to $700.00 for the second half of 1999 through 2000, and to $740.00 for 2001. Id.

The plaintiff testified that she "served lunches" for the Polk County School Board (Tr. 47). According to the plaintiff's earnings records, she earned $1,554.76 with this employer in 2000, and $220.40 in 2001 (Tr. 163-64). On the other hand, the plaintiff's disability report states that she worked as a food preparer at a public school for 4 hours a day and 5 days per week, at an hourly rate of $7.00, from fall 1998 until fall 2000 (Tr. 180).

Pointing to her earnings records, the plaintiff asserts that her earnings from her work as a food preparer "did not rise to the level of substantial gainful activity" (Doc. 17, p. 18). Thus, the plaintiff argues that

her monthly pay in 2000 would have been $172.75, which is less than the amount ordinarily considered to be substantial gainful activity for that year (id.).[4]

The Commissioner responds that the plaintiff's representation in her disability report "equates to $140 a week and, assuming four weeks in a month, $560 a month" (Doc. 18, p. 11).[5] Based on this calculation, the plaintiff's monthly earnings would have been more than the required $500.00 for substantial gainful activity in 1998 and the first half of 1999.

Consequently, there is a disputed issue whether the plaintiff's job as a food preparer amounts to substantial gainful activity. Of course, if it did not, the law judge could not rely upon that job as past relevant work in denying the claim for disability benefits.

Importantly, the plaintiff may have been lulled into not clarifying the evidence on that issue by comments made at the hearing. The law judge

---

[4]This calculation is based on the assumption that the plaintiff worked at the school for 9 months in 2000 (Doc. 17, p.18). The plaintiff's monthly earnings from the school for that year ($1,554.76 divided by 9) equal $172.75.

[5]The plaintiff's disability report indicates that she worked 20 hours per week at the school (Tr. 180 (4 hours per day and 5 days per week)). Twenty hours a week at an hourly rate of $7.00 equals a weekly pay of $140.00.

said to the vocational expert, "I know she doesn't have past ... relevant work" (Tr. 68). She said further, "at leas[]t it doesn't appear to be ... any substantial gainful activity" (id.). In light of those comments, plaintiff's attorney could reasonably think that it was unnecessary to develop the facts regarding the plaintiff's prior work. Accordingly, that issue should remain open for consideration on remand.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby **REVERSED**, and the matter is **REMANDED** for further consideration. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 9th day of January, 2014.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE